IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF
LOUISIANA

| | |
|---|---|
| LATARSHA CHARLES | ) |
| | ) |
| | ) |
| | ) CIVIL ACTION NO. |
| Plaintiff, | ) |
| | ) |
| | ) JURY TRIAL DEMAND |
| | ) |
| v. | ) |
| | ) |
| | ) |
| WAL-MART LOUISIANA, LLC | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

NATURE OF THE
ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 (the "ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Latarsha Charles ("Charles"), a qualified individual with a disability, who was adversely affect by such practices. Plaintiff, Latarsha Charles ("Charles"), alleges that Defendant, WAL-MART Louisiana, LLC., (hereinafter referred to as "WAL-MART"), violated the ADA by discriminating against her and failing to provide reasonable accommodations which would permit Charles to perform her job and by terminating her employment because of her disability.

## JURISDICTION AND
## VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA of 1990, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Louisiana.

## PARTIES AND OTHER PERSONS

3.      Plaintiff, Latarsha Charles, is a person of the full age of majority and a resident of the state of Louisiana.

4.      At all relevant times, WAL-MART, has continuously been and is now a Louisiana business that operates within the State of Louisiana, including the store located at 2428 West Pinhook Road, Lafayette, Louisiana 70508. WAL-MART has continuously been and is now doing business in the State of Louisiana and the City of Lafayette and has continuously had at least fifteen (15) employees.

5.      At all relevant times, WAL-MART, has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) of the ADA, 42 U.S.C. § 12111(5), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S. C. §§ 2000e(g) and (h).

6.      At all relevant times, Wal-Mart has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7.     At all relevant times, WAL-MART, is a registered business and trade name with the Louisiana Secretary of State office and has continuously been and is now doing business in the State of Louisiana and the City of Lafayette, and has continuously had at least fifteen (15) employees.

8.     At all relevant times, WAL-MART, has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

9.     At all relevant times, WAL-MART, has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

10.    At all relevant times, Charles was a qualified individual with a disability within the meaning of Section 101(8) of the ADA, 42 U.S.C. § 12111(8).

<u>STATEMENT OF CLAIMS</u>

11.    Ms. Charles filed her administrative complaint with the EEOC on or about April 18, 2017.

12.    Ms. Charles received a right to sue letter from the EEOC on April 25, 2018. This lawsuit is filed within 90 days of the right to sue letter.

13.    Ms. Charles began her employment with Wal-Mart in 1995 as a cashier. She worked at Wal-Mart tirelessly for ten (10) years before being promoted to Assistant Manager in 2005.

14.    In on or about May 1, 2015, after working tirelessly for Wal-Mart for twenty (20) years, Ms. Charles suffered an injury that required major surgery on her lumbar which left her with some physical disabilities. As a result of her injury and medical treatment, Ms. Charles

sought medical leave which she requested and took on May 18, 2015.

15.     Ms. Charles remained out of medical leave for one year under Wal-Mart's policy.

16.     On or about July 12, 2016, Ms. Charles' physician released her back to work with reasonable accommodations due to her physical disability. Her reasonable accommodations were based off her physical restrictions which were no twisting, no climbing stairs or ladders, no lifting/carrying over 15lbs, no pushing/pulling over 15lbs, must be able to switch between sitting and standing every hour, light duty work, and working no more than six (6) hours per day for no more than 5 days a week. Ms. Charles' injuries and restrictions were constituting "disabilities" under Section 3 of Title I of the ADA, 42 U.S.C. § 12102.

17.     Upon returning to work, on or about July 12, 2016, Ms. Charles was informed by Wal-Mart that she must put in a request for accommodation based on her medical condition and/or disability to which she did.

18.     On or about July 28, 2016, Ms. Charles received a call from her manager, Reginald Guillory who told her that it was time to go to Wal-Mart to pick up the request for accommodation papers.  Reginald informed Ms. Charles that the paperwork would be left with employee Crystal Craig. Reginald had informed Ms. Charles on the phone that the papers said she was prohibited from working any longer as an Assistant Manager.

19.     Officially, the paperwork she picked up was titled "Re Accommodation Request-Final Determination." In it Wal-Mart informed Ms. Charles that due to her disability and reasonable request for accommodations, she was prohibited from continuing to work as an Assistant Manager. Ms Charles was willing and able to continue to work as an Assistant Manager and could meet all the job requirements provided reasonable accommodations were made for instance reducing amount of weight required for the job from 25lbs to 15lbs. Wal-Mart refused

4

this reasonable accommodation.

20.     The paperwork went on to state "if a suitable position is currently available, you will be offered the position."

21.     Then after picking up the aforementioned paperwork on or about July 28, 2016 from Crystal Craig, and while in the store, Ms. Charles was approached by another employee who inquired about her status as the assistant manager. Ms. Charles informed the employee that she just learned that she would not be allowed to be the Assistant Manager any longer and would need a different job. This employee informed Ms. Charles to go see a Tracie Tressler who was the manager of the Vision Center in Wal-Mart because upon information and belief, an employee of the Vision Center was leaving causing a position to be open.

22.     Ms. Charles then spoke to Tracie Tressler who informed her that unfortunately she had just filled the two positions in the Vision Center in that Wal-Mart location. However, Mrs. Tressler went on to tell Ms. Charles that upon information and belief, the Vision Center at the New Iberia, Louisiana Wal-Mart had a full-time position available.

23.     Mrs. Verret then informed Mrs. Tressler that Ms Charles would accept that position because it met her reasonable accommodations and it was close to Ms. Charles' home and physicians.

24.     Shortly thereafter while still in the presence of Ms. Charles, Mrs. Tressler phones Jennifer Verret, the manager of the Vision Center of Wal-Mart at the New Iberia, Louisiana location and inquired as to the open position and Mrs. Verret confirm there was one. Mrs. Tressler then informed Mrs. Verret that Ms. Charles would like to accept it. Mrs. Verret then told Mrs. Tressler to email her Ms. Charles's name and information. While in the presence of Ms. Charles, Mrs. Tressler emailed Mrs. Verret the information about Ms. Charles as requested.

25.     Mrs. Verret went on to state that she would not be opening the requisition for that position until August 5, 2016 and so for Ms. Charles to go on the "wire" and apply for it before then. However, Ms. Charles was unable to apply for any positions online because each time she tried it sent her notice that she was already employed with Wal-Mart as an Assistant Manager.

26.     Ms. Charles left Wal-Mart that day and called the Wal-Mart District Manager's office and spoke to the secretary Mrs. Rose and asked her how Ms. Charles can go about accepting the position in the Vision Center at the New Iberia Location. Mrs. Rose stated she didn't know and that Ms Charles would need to speak to her manager, Reginald Guillory.

27.     Also during that phone call with Mrs. Rose, upon information and belief, Mrs. Rose told Ms. Charles that a Tammy from Home Office Accommodation Center stated that if Wal-Mart would have fired her in May then they wouldn't be having to deal with her.

28.     Then on or about July 29, 2016, Reginald sent Ms. Charles a text messaged that read "what have u decided?" Ms. Charles called him back and told him she was on her way to speak to him at Wal-Mart. Upon getting to Wal-Mart, Reginald Guillory asked if his co-manager, Mr. Peter could sit in on their meeting. Ms. Charles said sure. Mr. Reginald asked her what she decided and she informed him that she wanted the open position at the Vision Center in New Iberia.

29.     Mr. Reginald looked perturbed and asked Ms. Charles how she come to learn about this new position? Ms. Charles told him that Mrs. Tressler and informed her about it and that she, Mrs. Tressler and Mrs. Jennifer Verret had confirmed that there was an available position. At that point, Mr. Reginald took out his cell phone and called Mrs. Tressler to confirm and Mrs. Tressler did confirm everything.

30.     Then on August 2, 2016, Ms. Charles texted Mr. Reginald again to find out the

6

status of her job at the Vision Center in New Iberia and he never responded. Then on or about

August 8, 2016, Reginald texted her back asking her to call him. Ms. Charles called back and he

requested that she come meet with Mrs. Crystal Craig to discuss her employment. Ms. Charles

met with Mrs. Crystal and again informed her of her reasonable accommodations based on her

limited restrictions.

31.      As Mrs. Charles was leaving that meeting, she was approached by a then assistant

manager, Travis Riggs, who asked her "did you get the Vision Center position at New Iberia

store?" Ms. Charles told them no, that Wal-Mart stated they didn't have a position available there

and upon information and belief Mr. Travis told her Wal-Mart was not telling the truth.

32.      Then on August 10, 2016, Mr. Reginald texted Ms. Charles and again told her

that they could not accommodate her request regarding placing her at the Vision Center in New

Iberia and then proceeded to ask her if she would be interested in looking for a different position

at Wal-Mart stores in Bayou-Vista, Thibodeaux or Houma, which required her to drive between

forty-five minutes to over an hour each way.

33.      Ms. Charles still upset as to why they keep denying her reasonable

accommodation request, texted back to Mr. Reginald and asked "is there nothing in our market?"

Ms. Charles continued diligently to inquire about her simple and reasonable accommodations via

text to Reginald on September 1 and 7, 2016.

34.      Then Ms. Charles received a phone call from Human Resource manager, Cliff

Owens, on or about September 7, 2016. Ms. Charles asked why she couldn't just work back at

the store she had been working at as the Assistant Manager with her reasonable accommodations.

Upon information and belief, Mr. Owens stated to her that she is not allowed to come back to

work at her current store because she "demoted herself" by having a disability and that particular

Pinhook store does not allow for a salaried manager to work in a non-salaried position. Mr. Owens went on to tell Ms. Charles that she is not allowed to talk to any employees outside of her manager regarding any available positions at Wal-Mart locations that might accommodate her.

35.     Nonetheless, after refusing to allow her a reasonable accommodation to continue to work as an Assistant Manager or at the Vision Center, Wal-Mart placed her on additional hold while they evaluated her employment status and her re-assignment.

36.     On or about October 28, 2016, Ms. Charles was terminated. About two weeks thereafter, upon information and belief, the Vison Center of Wal-Mart at the New Iberia location had a new employee.

37.     At all relevant times, Ms. Charles could perform the physical essential functions of an Assistant Manager, a job she held with WAL-MART since 2005, with reasonable accommodations, such as reducing the amount of weight to be pushed, pulled or lifted to 15lbs from 25lbs. Thus, she was a "qualified individual" within the meaning of Section 101(8) of Title I of the ADA, 42 U.S.C. § 12111(8).

38.     At all relevant times, Ms. Charles could perform the job functions of a Vision Center employee with reasonable accommodations. Ms. Charles could also perform job duties required for positions at WAL-MART with her reasonable accommodations.

39.     Ms. Charles was a proven diligent worker who continued to seek out employment with WAL-MART with her reasonable accommodations and restrictions but was denied the same by WAL-MART.

40.     As a result of WAL-MART's intentional, irresponsible, and unlawful refusal of accommodations to Ms. Charles, as well as intentionally discriminating and retaliating against her by claiming she demoted herself by succumbing to a disability, she was deprived he equal

employment opportunities.

41.    Specifically, the effect of the practices complained of in Paragraph Nos. 11 - 40 has been to deprive Ms. Charles of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability in violation of Title I of the ADA, 42 U.S.C. § 12112.

42.    The unlawful employment practices complained of above were intentional.

43.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Charles

PRAYER FOR
RELIEF

Wherefore, the Ms. Charles respectfully requests that this Court:

A.    Grant a permanent injunction enjoining WAL-MART, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice that violates Title I of the ADA;

B.    Order WAL-MART to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.    Order WAL-MART to make Ms. Charles whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, providing compensatory damages for the surgery Ms. Charles was required to undergo as a result of the intentional and unlawful employment practices instituted by WAL-MART, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to,  reinstatement or front pay.

D.    Order WAL-MART to make Ms. Charles whole by providing compensation

9

for past and future pecuniary losses resulting from the unlawful employment practices described above;

     E.     Order WAL-MART to make Mrs. Charles whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to, emotional pain, suffering, loss of enjoyment in life and humiliation;

     F.     Order WAL-MART to pay Ms. Charles punitive damages for its intentional, malicious and reckless conduct, in amounts to be determined at trial.

     G.     Grant such further relief as the Court deems necessary and proper in the public interest.

     H.     Award Ms. Charles attorney's fees and its costs of this action.

JURY TRIAL DEMAND

Ms. Charles requests a jury trial on all questions of fact raised by her Complaint.

Respectfully submitted

  /s *David F. Rutledge*
**DAVID F. RUTLEDGE**, La. Bar #33639
330 Settlers Trace, Suite A
Lafayette, Louisiana 70508
Telephone: (337) 484-1529
Facsimile: (337) 806-9994
Attorney for the Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, pursuant to the terms the rules of court and the rules of civil procedure, a true and correct copy of the above and foregoing has been served upon all known counsel of record on this 23rd ----day of April 2018, through the electronic filing system of this court.


/s *David F. Rutledge*