UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| LATARSHA CHARLES | CASE NO. 6:18-CV-00559 |
| VERSUS | JUDGE SUMMERHAYS |
| WAL-MART LOUISIANA L L C | MAGISTRATE JUDGE WHITEHURST |

MEMORANDUM RULING

Presently before the Court is the Motion for Summary Judgment [doc. 15] filed by Wal-Mart Louisiana LLC. Plaintiff has filed an opposition to the motion. For the reasons below, Walmart's Motion for Summary Judgment is GRANTED.

## I.
### BACKGROUND

Plaintiff worked as an Assistant Manager at Walmart Store No. 2938 in Lafayette from 2007 until 2016.[1] Plaintiff had a history of back problems and underwent back surgery on May 11, 2015; she took a three-month leave of absence following her surgery.[2] Plaintiff was unable to return to work following her initial leave and extended her leave several times; she returned to work July 12, 2016, subject to specific medical restrictions.[3] Although Walmart policy provided that a leave of absence could not extend beyond twelve months, Plaintiff was permitted to remain on leave for fourteen months.[4] On July 12, 2016, Plaintiff submitted a Request for Reasonable Accommodation Form at the direction of her Store Manager, Reggie Guillory.[5] Walmart's Accommodation Service Center issued a determination letter on Plaintiff's reasonable

---

[1] Deposition of Latarsha Charles, pp. 16-18 [CMC/ECF Document ("Doc.") 15, Exhibit ("Exh.") A].
[2] *Id.,* pp 44, 51-51; Plaintiff's Leave of Absence Request, [Doc. 15, Exh. E].
[3] Deposition of Latarsha Charles, pp. 49, 51-52.
[4] Walmart Personal Leave of Absence Policy [Doc. 15, Exh. F]; Declaration of Cliff Owens at ¶14 [Doc. 15, Exh. B].
[5] Deposition of Latarsha Charles, pp. 49, 51-52 [Doc. 15, Exh. A].

accommodation request on July 27, 2016, and Plaintiff met with Mr. Guillory to review the determination letter on July 28, 2016.[6]

This letter stated that Plaintiff could not be accommodated in her current position as an Assistant Manager because her medical restrictions prevented her from performing one or more essential job functions.[7] Specifically, Assistant Managers had to be able to move, lift, carry and place merchandise and supplies weighing up to *twenty-five* pounds without assistance and work overnight and on varying shifts as required.[8] The summary judgment record shows that, as an Assistant Manager, Plaintiff worked as long as twelve to fourteen hours a day, and more than four to five days a week.[9] Plaintiff's light duty medical restrictions included lifting no more than *fifteen* pounds, limiting her workday to six hours, and limiting her work week to no more than four to five days per week. These medical restrictions, according to Walmart, prevented Plaintiff from performing the essential elements of the Assistant Manager position.[10]

The letter further stated that, because there was no reasonable accommodation that would enable Plaintiff to perform the essential functions of an Assistant Manager, the company would offer an alternative accommodation of reassignment to a suitable open position in Plaintiff's market for which Plaintiff was qualified and could perform within her medical restrictions.[11] The letter stated that Plaintiff could also apply for promotional transfer opportunities and positions in other markets that Plaintiff could perform within her restrictions; the letter also explained how to search for open positions, both hourly and salaried.[12] The letter indicated that if a suitable position was currently available, Plaintiff would be offered the position. However, if there was no suitable

---

[6] Doc. 15, Exh. H.
[7] *Id.*
[8] *Id.*
[9] Deposition of Latarsha Charles, pp. 28-35, 158-60.
[10] *Id.*, pp. 64-69, 195-198.
[11] Doc. 15, Exh. H.
[12] *Id.*

2

position immediately available, Plaintiff would be placed on personal leave during the job search for up to twelve weeks.[13] The letter also advised Plaintiff that she could appeal the decision by submitting a completed Request for Reconsideration Form within thirty days of Plaintiff's notification of the initial determination.[14]

Plaintiff accepted that her medical restrictions prevented her from performing the physical functions of the Assistant Manager job and agreed that she would seek reassignment.[15] She did not submit the Request for Reconsideration Form.[16] Plaintiff testified that she understood that by agreeing to the reassignment offer, she had twelve weeks to find another position at Walmart that she was qualified to perform.[17] Plaintiff claims that she was advised by a Manager at the Lafayette Walmart Vision Center that a Vision Center position was or would soon be available at the New Iberia Walmart store.[18] Plaintiff immediately advised Mr. Guillory that she was interested in the Vision Center position in New Iberia and he responded that he would investigate and get back with her.[19] On August 8, 2016, Plaintiff met at the store with Mr. Guillory and Crystal Craig, a Walmart Personnel Manager, and both advised Plaintiff that there was no open position in the New Iberia Vision Center.[20] Plaintiff expressed an interest in returning to the Lafayette Walmart as an hourly employee but was advised that Walmart's policy did not permit a prior manager to work as an hourly employee in the same store.[21] On October 28, 2016, Mr. Owens advised Plaintiff that she had to be terminated because there were no available positions that fit her restrictions and more than twelve weeks had passed since her reassignment period began.[22]

---

[13] *Id.*
[14] *Id.*
[15] Declaration of Cliff Owens at ¶10 [Doc. 15, Exh. B].
[16] Deposition of Latarsha Charles, pp. 70-71
[17] *Id.*
[18] *Id.,* at 73-77.
[19] *Id.,* at 75-76.
[20] *Id,* at 85-88.
[21] *Id.,* at 95-97; *see also* Declaration of Cliff Owens, ¶11.
[22] Deposition of Latarsha Charles, p. 136.

3

Plaintiff testified that she knew "what was going on" and that Walmart did not intend to find her a new position based on a conversation with the "Holy Spirit."[23] The "Holy Spirit" spoke to her on another occasion and told her that her neighbor would tell her that the New Iberia Vision Center position would be filled two weeks after she was terminated.[24] Plaintiff alleges that her neighbor did, in fact, tell her that the position was filled two weeks after her termination.[25] According to the manager of the New Iberia Vision Center, there was no position open in the New Iberia Vision Center between July 27, 2016 and October 28, 2016, nor were there any open positions or new hires in the New Iberia Vision Center between September 2011 and October 2017.[26]

## II.
## LAW AND ANALYSIS

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[27] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[29] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating

---

[23] *Id*, at pp. 108-115.
[24] *Id.*, at pp. 115-117, 122-123.
[25] *Id.*, at pp. 121-123.
[26] Declaration of Jennifer Verret [Doc.15, Exh. J].
[27] Fed. R. Civ. P. 56(a).
[28] *Id.*
[29] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

4

by competent summary judgment proof that there is an issue of material fact warranting trial.[30]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[31] "Credibility determinations are not part of the summary judgment analysis."[32] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[33]

**B. ADA Claim.**

"A plaintiff alleging disability discrimination can either provide direct evidence of the discrimination or rely on the *McDonnell Douglas* burden-shifting framework."[34] Plaintiff does not appear to base her claim on direct evidence of discrimination but instead relies on the *McDonnell Douglas* framework.[35] Under the *McDonnell Douglas* burden-shifting analysis, a plaintiff alleging disability discrimination must first establish a prima facie case of discrimination.[36] If the plaintiff successfully establishes a prima facie case, the defendant must articulate a legitimate,

---

[30] *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).
[31] *Roberts v. Cardinal Servs.,* 266 F.3d 368, 373 (5th Cir. 2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.,* 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[32] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.,* 308 F.3d 451, 458 (5th Cir. 2002).
[33] *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004) (quoting *Celotex v. Catrett,* 477 U.S. 317, 322 (1986)) (alterations in original).
[34] *Diggs v. Burlington N. & Santa Fe Ry. Co.,* 742 F. App'x 1, 3 (5th Cir. 2018) (citing E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 694 (5th Cir. 2014)).
[35] Plaintiff's Opposition at 7-9 [Doc.24] (argument based on *McDonnell Douglas* with no discussion of direct evidence of discrimination).
[36] *Delaval v. PTech Drilling Tubulars, L.L.C.,* 824 F.3d 476, 479 (5th Cir. 2016).

5

nondiscriminatory reason for the employment action.[37] The plaintiff then has the burden of showing that the articulated reason is pretextual.[38]

To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) the plaintiff has a disability; (2) the plaintiff was qualified for the job; and (3) the plaintiff was subject to an adverse employment decision on account of his disability.[39] Under the ADA, a person has a disability if they have: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) be[en] regarded as having such an impairment (as described in paragraph (3) [of the provision])."[40]

### 1. Existence of a Disability

Walmart first alleges that Plaintiff cannot establish that she has a disability because she does not allege that any of her major life activities were substantially limited. In 2008, Congress passed the "Americans with Disabilities Act Amendments Act of 2008" ("ADAAA") to reinstate "a broad scope of protection to be available under the ADA."[41] After the passage of the ADAAA, "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act...."[42] Also, "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008."[43] In passing the ADAAA, Congress "clarif[ied] that the Supreme Court and [the] EEOC had interpreted the 'substantially limits' standard to be a more demanding one than Congress had intended."[44] Instead, "[t]he inquiry in ... post-amendment case[s] is ... whether [plaintiff]'s impairment substantially

---

[37] Id.
[38] Id.
[39] E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688 (5th Cir. 2014).
[40] 42 U.S.C. § 12102(1).
[41] ADA AMENDMENTS ACT OF 2008, PL 110–325, Sept. 25, 2008, 122 Stat 3553.
[42] Id.
[43] ADA AMENDMENTS ACT OF 2008, PL 110–325, Sept. 25, 2008, 122 Stat 3553.
[44] Cannon v. Jacobs Field Servs. N. Am., Inc., 813 F.3d 586, 590 (5th Cir. 2016).

limits his ability 'to perform a major life activity as compared to most people in the general population.'"[45] Major life activities include, but are not limited to, "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working."[46] Further, the term substantially limits "shall be construed broadly in favor of expansive coverage...."[47]

Here, the documentation submitted by Plaintiff's doctor specifically includes the following restrictions: "no twisting, no climbing, no bending, no lifting/carrying over 15 lbs., no pushing/pulling over 15 lbs."[48] These restrictions would impose substantial limitations on the types of life activities identified in 29 C.F.R. § 1630.2(i)(1)(i).[49] Construing the term "substantially limits" broadly, and viewing evidence in favor of the non-moving party, the Court finds that there is a genuine issue of material fact as to whether Plaintiff has a disability within the meaning of the ADA.

### 2. Whether Plaintiff is Qualified

Next, Walmart argues that Plaintiff cannot establish that she was qualified for employment. To establish that she was "qualified," Plaintiff must show that either (1) she could "perform the essential functions of the job in spite of [her] disability," or, if she could not, (2) that "a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of

---

[45] *Id.* at 591 (quoting 29 C.F.R. § 1630.2(j)(1)(ii) (emphasis added)).
[46] 29 C.F.R. § 1630.2(i)(1)(i); *see also* 42 U.S.C. § 12102(2).
[47] *Id.*
[48] Doc. 15, Exh. G.
[49] *See also Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010) (quoting 42 U.S.C. § 12102(2)(A)).

7

the job."[50] A function is "essential" if it bears "more than a marginal relationship" to the employee's job.[51] Under the ADA, "reasonable accommodations" include

> [J]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.[52]

Here, the summary judgment record shows that Plaintiff was unable to perform the essential functions of an Assistant Manager due to her medical restrictions. Those essential functions included (1) moving, lifting, carrying and placing merchandise and supplies weighing up to twenty-five pounds without assistance, (2) grasping, turning and manipulating objects of varying size and weight, and (3) being available to work overnight and on varying shifts as required.[53] The summary judgment record also shows that the Assistant Manager position required more than the six hour workday and four - five day workweek restrictions imposed by Plaintiff's doctors.[54] Plaintiff accepted the determination by Walmart that she could not perform the functions of an Assistant Manager and agreed that she would seek reassignment.[55] Plaintiff acknowledged that, by accepting reassignment, she had twelve weeks to find an available position that she could perform within her medical restrictions.[56] Walmart advised Plaintiff how to search for available positions and even assisted her in that search.[57] Plaintiff expressed no interest in any available position for which she was eligible during the twelve-week reassignment period.[58]

---

[50] *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1093 (5th Cir.1996) (per curiam) (citing the ADA, 42 U.S.C. § 12111(8), which defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position ...").
[51] *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir.1993), holding modified on other grounds as discussed in *Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir.2002) (per curiam)
[52] 42 U.S.C. § 12111(9)(B).
[53] Job Description Assistant Manager (April 6, 2015), [Doc. 15, Exh. C].
[54] *Id.*
[55] Declaration of Cliff Owens, ¶10, [Doc. 15, Exh. B].
[56] *Id.*
[57] Deposition of Latarsha Charles, pp. 87-92, Exhibit A to Document 15.
[58] Declaration of Cliff Owens, ¶12, [Doc. 15, Exh. B].

In her opposition to the motion for summary judgment, Plaintiff first contends that she was qualified for the Assistant Manager position "with reasonable accommodations, such as reducing the amount of weight to be pushed, pulled or lifted to 15 lbs. from 25 lbs."[59] However, Plaintiff fails to explain how such an accommodation would be reasonable in light of the lifting requirements of the Assistant Manager position and the express requirement that she be required to lift twenty-five pounds. Plaintiff's accommodation argument also ignores the other essential requirements of the Assistant Manager position, including the ability to work weekends and work more hours and days than the restrictions imposed by Plaintiff's doctors.[60] Plaintiff points to no other accommodation that would allow her to perform the essential functions of an Assistant Manager. Accordingly, Plaintiff has not shown that she is qualified for the Assistant Manager position.

Plaintiff next contends that Walmart did not reasonably accommodate her by offering her a position in the Vision Center of the Walmart located in New Iberia. However, two declarations submitted by Walmart state unequivocally that there were no available positions in the New Iberia Vision Center.[61] One of these declarants, Jennifer Verret, was the manager of the New Iberia Vision Center at the time.[62] In response, Plaintiff cites a conversation with Verret in July 2016, as well as conversations with an unidentified neighbor and the "Holy Spirit" to support her contention that there was a position available in the New Iberia Vision Center.[63] As far as her conversation with Verret, Plaintiff's only evidence is her own deposition testimony. She did not submit any affidavits from witnesses to the conversation even though she indicates that other Walmart employees may have witnessed the conversation. Nor does she point to any documents showing

---

[59] Plaintiff's Opposition at 9 [Doc. 24].
[60] *See* Declaration of Cliff Owens, ¶¶ 8-9 [Doc. 15, Exh. B].
[61] Declarations of Cliff Owens and Jennifer Verret [Doc. 15, Exh. B and J].
[62] Doc. 15, Exh. J at ¶ 2.
[63] Deposition of Latarsha Charles at 108-117, 121-123, and 124-128 [Doc. 15, Exh. A].

9

that a position was open. Moreover, the conversation with Verret that Plaintiff recounts merely indicates a possible *future* vacancy. There was no indication that a vacancy actually existed in July 2016 or at the time that Plaintiff was terminated. Moreover, Plaintiff appears to have focused on the non-existent New Iberia position and did not seek out eligible positions that were actually available.

The ADA provides a right to reasonable accommodation but "not to the employee's preferred accommodation."[64] While reassignment to a different position may be a reasonable accommodation, "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform."[65] Here, the unequivocal testimony of Owens and Verret shows that Walmart could not have accommodated her by reassigning her to the New Iberia Vision Center because no position was available at the time. The other conversations cited by Plaintiff as evidence of an opening in the New Iberia Vision Center simply are not competent summary judgment evidence.

In sum, Plaintiff has not satisfied her prima facie burden because she has not shown that she was qualified for the Assistant Manager position. She has also not shown that Walmart failed to reasonably accommodate her disability. Accordingly, Walmart is entitled to summary judgment in its favor.

### 3. Pretext

Walmart further argues that even if Plaintiff could satisfy her prima facie burden under *McDonnell Douglas*, Walmart has stated a legitimate, nondiscriminatory reason for her termination – *i.e.* that she was incapable of performing the essential functions of her job or any

---

[64] *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011).
[65] *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.").

other available position for which she was eligible. This would place the burden on Ms. Charles to show that Walmart's articulated reason is pretextual. Ms. Charles presents no evidence to suggest that the articulated reason was pretextual and does not even address this issue in her opposition to the motion. Ms. Charles relies solely on the fact that she believes that there was a vacant position in the New Iberia Vision Center. Unfortunately, the summary judgment record establishes that there was no such position available.[66]

For the foregoing reasons, the Court finds that Plaintiff has failed to establish the essential elements of a claim for discrimination under the ADA. The Motion for Summary Judgment [doc. 15] filed by Walmart is GRANTED. All claims contained in the Plaintiff's Complaint are DISMISSED WITH PREJUDICE. A separate judgment in conformity with the foregoing reasons will be entered.

THUS DONE in Chambers on this 11th day of March, 2020.

Robert R. Summerhays
United States District Judge

---

[66] Declaration of Cliff Owens at ¶13, [Doc. 15, Exh. B]; Declaration of Jennifer Verret [Doc. 15, Exh. J].